UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ADIS MARSHA AMDAMASKAL, | Case No. 17-CV-4961 (PJS/SER) |
| Petitioner, | |
| v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| SELAMAWIT MARSHA AMDAMASKAL, | |
| Respondent. | |

Allison Maxim, MAXIM LAW, PLLC, for petitioner.

Ruta Johnsen, NANCY ZALUSKY BERG, LLC, for respondent.

This is an action under the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. Petitioner Adis Marsha Amdamaskal ("Adis") seeks the return of his children, M. and L., claiming that their mother, respondent Selamawit Marsha Amdamaskal ("Selamawit"), wrongfully removed them to the United States from Israel. Selamawit raises the affirmative defenses that (1) Adis commenced this action more than one year after the removal and the children are settled in the United States, and (2) the children would be at grave risk of harm if they were returned to Israel.

The Court held evidentiary hearings in this matter on April 2 and April 25, 2018. Adis participated in the hearings via video teleconference, as he was unable to obtain a

visa to travel to the United States.  Based on the following findings of fact and conclusions of law, the Court holds that the children are settled in the United States and denies Adis's petition for their return.

## I.  FINDINGS OF FACT

### A.  Background

1.      Adis immigrated to Israel from Ethiopia in 1991.  Resp't Ex. 101 ¶ 6.

2.      Adis and Selamawit were married in Ethiopia in 2002.  This was Adis's second marriage.  After the marriage, Selamawit immigrated to Israel.  Resp't Ex. 101 ¶ 6; Pet'r Ex. 16 ¶ 6.[1]

3.      M. was born in 2006 while Adis and Selamawit were traveling in the United States.  The family returned to Israel when M. was six months old.  Resp't Ex. 101 ¶ 6.

4.      L. was born in Israel in 2011.  Resp't Ex. 101 ¶ 6.

5.      In March 2013, Adis was convicted of assaulting Selamawit and one of the children.  The written record describes Adis as pinching or scratching the child and pouring water on Selamawit.  Adis was sentenced to a conditional sentence of six months, with the condition being that he not be convicted of additional assaults.  Pet'r Ex. 18.

---

[1]Petitioner's Exhibit 16 is in Hebrew; the Court cites to the attached translation.

6.      Around the time of these convictions, Selamawit initiated divorce proceedings in Israel.  Pet'r Ex. 16; Resp't Ex. 118.  After mediation, however, Selamawit decided to reconcile with Adis for the children's sake.

7.      Selamawit alleges that Adis regularly verbally and physically abused her during their marriage.  She describes grave forms of abuse, including rape and death threats.  Resp't Ex. 118.  There is also evidence that Adis committed some type of abuse against his first wife.  Selamawit testified that she brought her children to the United States to protect them from Adis.

## B.  The Children's Removal to the United States

8.      With Adis's knowledge and permission, Selamawit and the children left Israel in January 2016 to visit family in Ethiopia.  They were supposed to return to Israel on February 4, 2016, but instead Selamawit brought the children to the United States.  Resp't Ex. 111 ¶ 10.  Selamawit did so without the knowledge or permission of Adis.

9.      A few days after Selamawit traveled to the United States, Adis's sister contacted one of Selamawit's sisters in Ethiopia.  Selamawit's sister informed Adis's sister that Selamawit had left for the United States.  Resp't Ex. 119.

Adis testified that Selamawit's family thought that Selamawit had returned to Israel and that they did not tell him that she had departed for the United States.  Documents in the record, however, make it clear that Adis knew almost immediately

that Selamawit and the children were in the United States.  Pet'r Ex. 11 (February 7, 2016 letter from Israeli Ministry of Justice following up on a conversation with Adis and enclosing forms "required by the authorities in the US"); Resp't Ex. 139 at 5 (March 2, 2016 email from Adis's counsel stating that Selamawit and the children are in "Washington, Minnesota").  The Court therefore credits the written statement of Selamawit's sister, who avers that she told Adis's sister that Selamawit went to the United States.

10.     On February 4, 2016—the same day that Selamawit and the children were supposed to return to Israel—Adis filed a complaint with the Israeli police concerning his missing wife and children.  Pet'r Ex. 10.  Ten days later, on February 14, 2016, Adis, through counsel, sent a letter and supporting materials to the Israeli Ministry of Justice entitled "Re: Application to Institute Proceedings Under The Hague Convention— Abduction of Minors."  Resp't Ex. 104.  Adis submitted these materials in accordance with instructions from the Ministry of Justice, which provided forms "required by the authorities in the US."  Pet'r Ex. 11.

11.     On February 29, 2016, Adis obtained an ex parte order from an Israeli court prohibiting the removal of the children from Israel.  Resp't Ex. 105.  Adis also

obtained a stay of leave order from the court dated March 1, 2016, apparently also prohibiting the children's removal.[2]  Resp't Ex. 106.

12.    At some point prior to May 2016, the Israeli Ministry of Justice forwarded Adis's Hague Convention application to the U.S. State Department.[3]  Resp't Ex. 112.

13.    As noted, Adis knew almost immediately that Selamawit and the children were in the United States.  Further, at least as early as March 2016, Adis knew that they were in Minnesota.  Resp't Ex. 139 at 5 (March 2, 2016 email from Adis's counsel stating "[a]ccording to information I have that I submitted to your office, the wife is in Washington, Minnesota, with the minors").  And as of May 30, 2016, Adis knew that the children were probably living in St. Paul, where Selamawit's sister and brother live. Resp't Ex. 139 at 2 (May 30, 2016 email from Adis's counsel stating that Selamawit's sister lives in St. Paul and that "[t]he mother and the minor girls are apparently with her").

Adis testified that he did not learn of his children's whereabouts until sometime after March 2017.  The Court does not credit this testimony.  It is true that the hearings

---

[2]This document, like many documents in the record, has been heavily redacted.

[3]The Hague Convention requires each contracting state to designate a "Central Authority" that, among other things, is responsible for taking appropriate measures to locate wrongfully removed children and secure their voluntary return.  *Silverman v. Silverman*, 338 F.3d 886, 891 n.12 (8th Cir. 2003).  The Central Authority for the United States is located within the State Department.  22 C.F.R. § 94.2; 22 U.S.C. § 9009.

before the Court were plagued with technical difficulties and language barriers that hampered both parties' ability to present their cases and the Court's ability to assess the witnesses' credibility. That said, the Court believes that Adis strategically retreated into vague statements and feigned a lack of memory when pressed for details concerning his knowledge of his family's whereabouts. His testimony was inconsistent with emails from his counsel indicating knowledge that the children were in Minnesota. Further, when asked about these emails during the hearing, Adis changed his earlier testimony and stated that he learned of their whereabouts in 2016 but claimed that he could not remember the month.

14. On March 7, 2017, Selamawit initiated divorce proceedings in Ramsey County District Court by serving Adis with a summons and petition for dissolution of marriage. Resp't Exs. 109, 110. Adis initially filed what appears to be a pro se response asking that the case be dismissed and citing, among other things, his Hague Convention application. Resp't Ex. 111. Adis later filed a formal answer and counter-petition through counsel. Resp't Ex. 117. In the meantime, the State Department formally notified the court that Adis had applied for the children's return under the Hague Convention. Resp't Ex. 112. The State Department explained that, as a result, the state court should refrain from making any custody determinations until the Hague Convention issue was resolved. *Id.* The state court eventually gave Adis until

September 18, 2017 to initiate court proceedings under the Hague Convention. Resp't Ex. 116.

15.     Adis did not meet the September 18 deadline. But on or about October 17, 2017, Adis commenced this action in state court by serving Selamawit with a verified petition. ECF No. 1-2. Selamawit removed the proceeding to this Court on October 31, 2017. ECF No. 1.

### C. The Children's Experience in the United States

16.     Selamawit has a brother and a sister who live in St. Paul. When Selamawit and the children first arrived in the United States, Selamawit's brother and sister lived in the same housing complex. Selamawit and the children initially lived with her sister, who is married with children. Later, after the sister moved, Selamawit and the children moved in with Selamawit's brother, who has recently married.

17.     Selamawit has applied for asylum in the United States. Resp't Ex. 118. She is authorized to work and is currently employed full time. Resp't Exs. 128, 129.

18.     At the time Adis commenced this proceeding, Selamawit and the children had been in the United States for over 20 months and the children were 6 and 11 years old.

19.     L. attends a Jewish day school, which Selamawit found by contacting the local Jewish Community Center.

20.     L. is a happy, outgoing, and engaging child with many friends.  She is a leader in her class and speaks fluent English.  She has had no difficulty adjusting to school or her new environment.

21.     M. attends a charter school.  She also attends the afternoon program at the same Jewish day school that her sister attends, where she receives religious and language instruction.

22.     M. is a friendly, respectful, and bright student who interacts well in class, has friends, and generally fits in well at school.  M. also participates in extracurricular activities.  She won an award at a dance competition, Resp't Ex. 126, and is currently involved in a tennis program.  Like her sister, M. speaks fluent English and has had no difficulty adjusting to school or her new environment.

23.     Since their arrival in the United States, the children have received immunizations and other routine medical care.  Resp't Ex. 127.

## II.  CONCLUSIONS OF LAW

1.     The Court has jurisdiction over this action pursuant to 22 U.S.C. § 9003(a).

2.     The Hague Convention was adopted in 1980 to address "the problem of international child abductions during domestic disputes."  *Abbott v. Abbott*, 560 U.S. 1, 8 (2010).  The Hague Convention does not establish a substantive law of custody, but rather serves as a forum-selection mechanism.  *Barzilay v. Barzilay*, 600 F.3d 912, 916-17

(8th Cir. 2010). Its purpose is to "provide for a reasoned determination of where jurisdiction over a custody dispute is properly placed." *Id.* (citation and quotations omitted). To that end, it creates a strong presumption in favor of returning children to their country of habitual residence. *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1228 (2014). Once a petitioner has established a prima facie case, the child must be promptly returned unless the respondent can establish one of the recognized affirmative defenses. *Abbott*, 560 U.S. at 9.

3.      To establish a prima facie case for a child's return under the Hague Convention, the petitioner must prove by a preponderance of the evidence that: "(1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under that State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention." *Custodio v. Samillan*, 842 F.3d 1084, 1088 (8th Cir. 2016); *see also* 22 U.S.C. § 9003(e)(1).

4.      There is no dispute that Adis has met his burden of proving that the children habitually resided in Israel, that their removal to the United States on or about February 4, 2016, was in breach of his custody rights, and that he was exercising those rights at the time of removal. Accordingly, the burden shifts to Selamawit to establish

an affirmative defense to the children's return. *Custodio*, 842 F.3d at 1089; 22 U.S.C.

§ 9003(e)(2).

5.     As noted, Selamawit raises two affirmative defenses. First, she raises the "well settled" defense—that is, she asserts that Adis commenced these proceedings more than one year after the wrongful removal and the children are now settled in their new environment. *Lozano*, 134 S. Ct. at 1229. Selamawit bears the burden of establishing this defense by a preponderance of the evidence. *Id.*; *see also* 22 U.S.C. § 9003(e)(2)(B).

6.     Second, Selamawit raises the "grave risk" defense—that is, she asserts that returning the children to Israel would expose them to a grave risk of physical or psychological harm. *See Acosta v. Acosta*, 725 F.3d 868, 875 (8th Cir. 2013). Selamawit bears the burden of establishing this defense by clear and convincing evidence. *Id.*; *see also* 22 U.S.C. § 9003(e)(2)(A).

7.     Selamawit has proven the elements of the well-settled defense.

The Hague Convention permits a court to deny a petition for a child's return if the petition was filed more than one year after the wrongful removal and the child is settled in her new environment. The one-year period is not a statute of limitations; instead, its expiration "opens the door to consideration of a third party's interests, *i.e.*,

the child's interest in settlement." *Lozano*, 134 S. Ct. at 1234-35. For that reason, it is not

subject to equitable tolling. *Id.* at 1236.

Adis does not dispute that he did not commence these proceedings until more

than one year had passed from February 4, 2016, the date of the wrongful removal. *See*

*Wojcik v. Wojcik*, 959 F. Supp. 413, 418-20 (E.D. Mich. 1997) (submitting a Hague

Convention application to the State Department does not stop the one-year clock). The

only question, then, is whether the children are settled in the United States.

In this context, "settled" means that "the child has significant emotional and

physical connections demonstrating security, stability, and permanence in [her] new

environment." *Lozano v. Alvarez*, 697 F.3d 41, 56 (2d Cir. 2012), *aff'd sub nom. Lozano v.*

*Montoya Alvarez*, 134 S. Ct. 1224 (2014). In determining whether a child is settled, courts

consider such factors as:

> (1) the age of the child; (2) the stability of the child's
> residence in the new environment; (3) whether the child
> attends school or day care consistently; (4) whether the child
> attends church [or participates in other community or
> extracurricular school activities] regularly; (5) the
> respondent's employment and financial stability; (6) whether
> the child has friends and relatives in the new area; and
> (7) the immigration status of the child and the respondent.

*Id.* at 57 (citation and quotations omitted; alteration in original).

All of these factors indicate that M. and L. are settled in their new environment.

At the time Adis filed the petition, the children were 11 and 6 years old, which is old

enough to form relationships and emotional ties to the community.  They had also been here for over 20 months—over a fourth of L.'s life— and have lived with extended family in the same housing complex since their arrival.

Selamawit took immediate steps to enroll the children in school—and it is clear, from the specific and affectionate testimony of the school official, that they are fully integrated into and thriving in their classrooms.  They are fluent in English.  Through their school and after-school programming, the children have a connection to their local religious community.  The older child, M., is involved in age-appropriate extracurricular activities.  The children are also surrounded by extended family; they not only live with their uncle and his wife, but they have an aunt and cousins nearby with whom they are close.  Finally, Selamawit is legally authorized to work in the United States, has a full-time job, and has applied for asylum; M. is a citizen of the United States.

The only contrary evidence is that the children have allegedly told Adis that they want to return to Israel.  The evidence regarding these statements is vague and confusing, however.  Moreover, Adis produced only one text message that he purportedly received from one of his children;[4] he failed to produce any of the other

_____

[4]The authenticity of this text is in some doubt.  Although Adis's exhibit list indicates that he received the text directly from one of his children, during his testimony he indicated that the message was sent to one of his daughter's friends who then

(continued...)

purported messages that he described in his testimony.  The Court therefore does not

place much weight on these alleged indications that the children are not settled.

In short, the Court finds that Selamawit has met her burden of showing that the

children are settled in their new environment.

8.      The Court will not exercise its discretion to return the children.

Even when a court has found a child to be settled in her new environment, the

court retains the equitable discretion to order the child's return if other

factors—including "the need to discourage inequitable conduct"—outweigh the child's

need for stability.  *Lozano*, 134 S. Ct. at 1237 (Alito, J., concurring); *see also Tsai-Yi Yang v.

Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007) (even if the respondent establishes an

affirmative defense, the court retains the discretion to return the child if necessary to

effectuate the goals of the Hague Convention).

In this case, returning the children to Israel despite their settled status in the

United States is not necessary to serve the purposes of the Hague Convention.

Although Selamawit did not inform Adis of the children's location, she did not hide

their presence in Minnesota.  Instead, she lived openly with relatives—relatives whose

identities and whose presence in the United States were known to Adis.  She also

_____

[4](...continued)
forwarded it to him.  The date of the message is unclear, and the screen capture in the
record appears to be primarily in Hebrew; there are no legible names.  Pet'r Ex. 20.

enrolled the children in school, obtained medical care for them, and applied for asylum. Adis points out that Selamawit waited to file for divorce until just after a year from the wrongful removal, suggesting that this indicates an attempt to conceal the children's location. As noted, however, Adis was aware almost from the beginning that the children were in Minnesota. Moreover, even after being served with divorce papers, Adis waited an additional seven months to initiate this action. Whatever the reason for the delay, it is not attributable to inequitable conduct by Selamawit.

In addition, although the Court need not—and does not—determine whether Selamawit has proven the "grave risk" defense, the Court does harbor concerns that the children may be at risk. Selamawit has alleged ongoing and serious abuse, and her allegations have some credibility given that Adis was actually convicted of assaulting both her and one of the children. The Court therefore does not believe that there are any factors that would outweigh the children's interest in remaining settled. Adis's petition is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT petitioner's Hague Convention petition [ECF No. 1-1] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 10, 2018                          s/Patrick J. Schiltz
                                               Patrick J. Schiltz
                                               United States District Judge